IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT O.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 7284 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Scott O.'s motion to remand the Administrative Law Judge's ("ALJ") opinion denying his application for disability benefits (D.E. 17) and Defendant's motion to affirm (D.E. 23).

**I. Procedural History**

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 17, 2015, alleging he became disabled on June 14, 2015. (R. 935.) After a hearing in 2017, an ALJ found him not disabled in April 2018 and Plaintiff appealed (R. 30.) While that appeal was pending, Plaintiff filed a new application for benefits; this Court subsequently remanded Plaintiff's initial claim. (R. 1088-89.) The two applications were consolidated and on July 13, 2020, Plaintiff and a vocational

---

[1] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 5, 2021, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 7.)

expert ("VE") testified before the ALJ, and on August 17, 2020, the ALJ denied Plaintiff's application for benefits, finding him not disabled under the Social Security Act (the "Act").[4] This appeal followed.

## II. The ALJ Decision

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA") five-step sequential evaluation process. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 15.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of obesity, chronic polyarticular small and medium joint arthralgias (pain localized to a joint), neuropathy, generalized anxiety disorder, and depression. (R. 937.) At Step Three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the SSA's listed impairments. (R. 938.) In making this determination, the ALJ undertook the so-called Paragraph B analysis and determined that Plaintiff had moderate limitations in understanding, remembering and applying information, interacting with others, and concentrating, persisting and maintaining pace, and mild limitations in adapting and managing himself. (R. 940-41.)

Next, the ALJ assigned Plaintiff a residual functional capacity ("RFC") to perform light work except that he could occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently but not constantly handle and finger with his non-dominant upper extremity; and have no concentrated exposure to extreme cold, vibrations, or hazards. (R. 942.) Additionally, Plaintiff could understand, remember, carry out and sustain performance of simple, repetitive work tasks,

---

[4] This case came before the ALJ on remand of the first ALJ decision by the Appeals Council, which directed further consideration of Plaintiff's subjective allegations and opinion evidence, in particular that of Dr. Robert Simba. (R. 1090.) After the 2020 hearing and the ALJ's decision finding Plaintiff not disabled, the Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

complete a normal workday, interact occasionally with supervisors, coworkers, and the public, and adapt to changes/stressors associated with simple, routine, competitive work. (*Id*.) At Step Four, the ALJ concluded that based on the VE's testimony, Plaintiff could not perform any past relevant work, but that at Step Five, jobs existed in significant numbers in the national economy that he could perform, and thus he was not disabled under the Act. (R. 23-25.)

## III. Analysis

On appeal, Plaintiff argues that (1) the ALJ did not adequately accommodate Plaintiff's limitations in concentration, persistence, and pace; (2) the ALJ improperly assessed the opinion of private neuropsychological examiner Dr. Gelbort; (3) the ALJ improperly assessed Plaintiff's manipulative limitations; (4) the ALJ did not properly evaluate consultative examiner Dr. Lopez's opinion; and (5) the ALJ's subjective symptom evaluation was not supported by substantial evidence. We will address each issue in turn.[5]

### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5] Plaintiff additionally seeks remand based on a constitutional separation of powers challenge. While Plaintiff's counsel dropped the argument in a number of subsequent cases, he did not here, and so we address it. Plaintiff argues that the statutory removal protection for a Commissioner of Social Security found in 42 U.S.C. § 902(a)(3) is a constitutionally defective delegation of power because the Commissioner is allowed to serve for a longer term than the President and cannot be removed except for cause. In claimant's view, since the Commissioner's statutory authority is defective, the ALJ and the Appeals Council operating under the Commissioner exercised power they did not lawfully possess, compelling remand under Supreme Court precedent in *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020). However, as has been held numerous times in this circuit and others, Plaintiff's "failure to show that any injury resulted from this allegedly invalid delegation of authority makes this argument a nonstarter." *Michelle S. v. Kijakazi*, No. 21 CV 2577, 2022 WL 4551967, at *6 (N.D. Ill. Sept. 29, 2022). Plaintiff does not identify any harm that he suffered other than the denial of his request for disability benefits. In accordance with the overwhelming weight of authority in this circuit and nationwide, this Court finds claimant's constitutional argument to be without merit and does not remand on this issue. *See Lissette B. v. Kijakazi*, No. 20 CV 7685, 2023 WL 2572431, at *2 (N.D. Ill. Mar. 20, 2023); *Kristen K. v. Kijakazi*, No. 20 C 5177, 2022 WL 6123338, at *6 (N.D. Ill. Oct. 7, 2022); *Michelle S.*, 2022 WL 3716080, at *7 (collecting cases).

conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). "An ALJ need not specifically address every piece of evidence but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal citations and quotations omitted).

  **B.** **The Mental Limitations in the RFC Were Supported By Substantial Evidence.**

  Plaintiff argues that the RFC did not adequately account for his moderate limitations in concentration, persistence, and pace ("CPP") because "the ability to stick with a given task over a sustained period is not the same as the ability to learn how to do a task of a given complexity." (Pl. Mot. in Support of Sum. J. at 3) The ALJ further erred, Plaintiff contends, by questioning the VE at the hearing about acceptable amounts of time off work but not including this discussion in the decision.

  We disagree. The Seventh Circuit has recently held that there is "no magic words requirement" for addressing limitations in concentration, persistence, and pace in the RFC, as long as it conveys in some way the restrictions necessary to address a claimant's limitations. *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019). In this case, the ALJ went further than merely limiting Plaintiff to simple and routine tasks, and specifically addressed his concentration limitations in the RFC by noting that he would be able to "sustain" performance of simple repetitive tasks and "complete a normal workday." As we explain more thoroughly below in Part III(C), these limitations relate not only to Plaintiff's ability to work at a given pace over the course of an entire given day but also address his specifically noted difficulties with performing complex tasks.

4

We find that the ALJ amply supported the mental limitations – including those concerning CPP – in the assigned RFC. Specifically, in finding Plaintiff could "understand, remember, carry out and sustain performance of simple, repetitive work tasks" despite moderate limitations in CPP, the ALJ cited to the following evidence:

- At his November 2015 psychological examination, Plaintiff was able to perform a number of tests of memory and fund of knowledge without noted issues with concentration or maintaining pace; (R. 940.)

- At his December 2015 physical consultative examination, Plaintiff could perform simple cognitive tests without difficulty, although more complex tasks were mildly affected; (*Id.*)

- At a series of consultative psychological examinations in April-June 2019, cognitive abilities were measured in the middle of the low average range, including indices that measured verbal attention and concentration and freedom from distractibility, with Plaintiff's ability to perform complex tasks being more limited. The examiner concluded that Plaintiff's cognitive issues could likely be "worked around." (R. 940-41, 948.) (*Id.*)

- Treatment for mental symptoms was generally conservative, consisting of medication such as Lexapro and Paxil prescribed by Plaintiff's primary care doctor and mental status examinations were devoid of abnormal findings and Plaintiff was noted to be pleasant, happy, and alert, with normal speech and adequate hygiene. (R. 947.)

Therefore, the ALJ's limiting Plaintiff to "simple and routine" tasks directly accounted for his difficulties performing more complex activities. Importantly, the mental limitations in the RFC track the opinions of two Agency doctors who opined that Plaintiff was able to perform simple and routine tasks despite his limitations in concentration, persistence, and pace. Specifically, on reconsideration, Ellen Rozenfeld, Psy.D., stated in the narrative portion of her opinion that Plaintiff "retains the capacity to understand, remember, carry out and sustain performance of simple, repetitive work tasks, complete a normal workday, interact occasionally with coworkers/supervisors/public and adapt to changes/stressors associated with simple routine competitive work activities." (R. 1080.) Therefore, we are satisfied that the ALJ adequately

considered the evidence before concluding that Plaintiff's moderate limitations in concentration, persistence, and pace were accounted for in the RFC. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (ALJ reasonably relied on narrative portion of RFC opinion because it was an accurate representation of Plaintiff's ability to perform at "moderate" pace.) Dr. Rozenfeld found Plaintiff able to "sustain" performance of simple and repetitive tasks, which indicates an ability to maintain a consistent pace, and she specifically clarified that Plaintiff could complete a full workday. (R. 1080.)

The ALJ also did not err with respect to his questioning of the VE during the hearing. Although Plaintiff argues that by asking the VE about off-task time the ALJ "acknowledged" that Plaintiff would be off-task and needed such a limitation in the RFC, that is not an accurate representation of what the ALJ concluded. At the hearing, the ALJ asked the VE generally about allowable off-task time for unskilled work; nothing indicated that the ALJ determined that Plaintiff would be off-task for an unallowed amount of time or that the RFC needed to reflect off-task time. *See Kathleen C. v. Saul*, No. 19 CV 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) ("Plaintiff's problem in this area appears to be that of the over-inclusive hypothetical. The fact that an ALJ considers adding a mental limitation to an RFC does not establish that such a limitation is ultimately warranted.... [T]he ALJ's hypothetical question to the VE simply proves she gave due consideration to the matters about which she inquired.").

    **C.**    **ALJ Sufficiently Explained Weight Given to Dr. Gelbort's Opinions.**

Next, the ALJ supported with substantial evidence his analysis of Dr. Gelbort's opinions. At the request of Plaintiff's primary care physician, Gelbort performed psychological and cognitive testing of Plaintiff over the course of three days between April and June of 2019, ultimately concluding, as relevant, that Plaintiff tested in the middle of the low average range on

6

the Working Memory Index, which measured verbal attention and concentration, as well as freedom from distractibility abilities. (R. 948.) Plaintiff's higher cognitive functions showed that his verbal processing speed was slightly impaired on more complex tasks. (*Id.*) Importantly, Dr. Gelbort opined that Plaintiff would likely be able to "work around" his cognitive impairments because his mood disturbance was his more significant psychological issue.[6]

Plaintiff argues that the ALJ erred by summarizing Dr. Gelbort's findings and not explaining how certain test results Plaintiff characterizes as "abnormal" factored into the RFC. We disagree. An ALJ's summary of medical evidence need not discuss everything in the medical record, as long as the summary does not ignore evidence contrary to the ALJ's conclusion. *See Gedtaus v. Saul,* 994 F.3d 893, 901 (7th Cir. 2021)*.* The ALJ here did not ignore lines of evidence favorable to Plaintiff; she acknowledged Dr. Gelbort's conclusions about Plaintiff's test results being mostly in the average or low average range, noted his increased difficulties working with more complex tasks and slight limitations in motor programming or planning, and the doctor's ultimate conclusion that despite all of his deficiencies, Plaintiff would likely be able to "work around" his cognitive impairments.

Importantly, other test results Plaintiff points to as not being addressed by the ALJ were some of those Dr. Gelbort concluded Plaintiff would be able to "work around." (R. 1634-38.) Moreover, Plaintiff speculates that some of the "ignored" test results and Dr. Gelbort's comment that "when [Plaintiff] tries to work quickly, his accuracy declines significantly" meant that Plaintiff

---

[6] The ALJ gave great weight to Dr. Gelbort's conclusions regarding Plaintiff's cognitive abilities and the opinion that he would be able to "work around" them and little weight to his opinion that Plaintiff's mood disturbance was more severe than his cognitive impairments. Plaintiff does not disagree with the way the ALJ weighed Dr. Gelbort's opinion but only objects that the ALJ did not explain how certain pieces of evidence factored into the RFC decision.

could not work at a competitive pace, but Plaintiff offers no evidence to support that speculation.[7] As discussed above, throughout her opinion, the ALJ noted evidence of Plaintiff's abilities and limitations with respect to working at a regular pace throughout an entire workday; Plaintiff's argument to the contrary is little more than a disagreement with the way the ALJ weighed the evidence.

> D.  The RFC Sufficiently Addresses Plaintiff's Manipulative Limitations.

Plaintiff acknowledges that the ALJ summarized both positive and negative evidence concerning his upper extremity issues and ability to handle and finger. (Pl. Mem. in Support of Sum. J. at 8.) He also does not disagree with the ALJ's decision to give great weight to the 2020 Agency opinion that Plaintiff could frequently handle and finger with his left hand or to give no weight to the 2015 opinion of Plaintiff's treating physician, Dr. Semba, that Plaintiff had limitations in reaching, handling, and fingering and 2/5 grip strength. *Id.* Instead, Plaintiff argues that the ALJ did not explain well enough how she weighed the evidence or why she determined that the evidence in support of the RFC outweighed the evidence that favored Plaintiff and argues that the ALJ impermissibly "played doctor" by determining which medical evidence supported the RFC and why contrary evidence has not been included in the RFC.

We disagree. The ALJ did exactly what she was supposed to do by discussing nearly all the medical evidence concerning Plaintiff's manipulative impairments, acknowledging evidence

---

[7] For example, Plaintiff contends that the ALJ did not explain how she accounted for test results such as mild impairment of tactile/kinesthetic testing on the right side and borderline to mild impairment on the left side and average to low average fine motor speed and then speculates that these average or low average results should have resulted in a different RFC. As we explain above, the ALJ supported with substantial evidence her consideration of the evidence concerning Plaintiff's ability to sustain CPP, including the fact that many of Plaintiff's test results were in the average or low average range, Dr. Gelbort's findings that Plaintiff had greater deficiencies with complex tasks, and his opinion that Plaintiff would be able to "work around" his deficiencies. *See, Deborah M. v. Sau.,* 994 F.3d 785, 789 (7th Cir. 2021) (omitted evidence did not suggest any substantially different information than the evidence considered by the ALJ).

that supported Plaintiff's position, and evaluating the various medical opinions before relying on several to support the RFC. *See Crystal M. on behalf of D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *6 (N.D. Ill. May 18, 2022) (ALJ's identification of contrary evidence was enough to show how ALJ weighed evidence to support RFC). Plaintiff is asking the court to reweigh the evidence, which we cannot do.

### E. The ALJ Properly Treated the Opinion of Dr. Lopez.

The ALJ discounted the opinion of consultative examiner Dr. Lopez's that Plaintiff was limited to lifting, carrying, pushing, and pulling up to ten pounds for two reasons: it was based only on Dr. Lopez's single, consultative examination and that the only other medical record Dr. Lopez reviewed was Dr. Gelbort's neuropsychological opinion. (R. 952.) We acknowledge Plaintiff's argument that it seems disingenuous to reject a consultative examiner's conclusion for being based on only a single examination while accepting the opinions of Agency doctors that did not examine the Plaintiff at all, yet we do not need to reach that issue because the ALJ's second reason for discounting Dr. Lopez's opinion was sufficient and thus, she supported with substantial evidence her decision to give the opinion, as a whole, little weight.[8]

In short, the ALJ rejected Dr. Lopez's opinion because it was not supported by other medical evidence and was inconsistent with the bulk of the medical records, including the opinions of the Agency doctors who had reviewed Plaintiff's entire medical history. By only reviewing Dr.

---

[8] Plaintiff argues that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled ... can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, in this case, the consultative examiner did not opine Plaintiff was disabled but merely offered a physical RFC that the ALJ found was not entitled to any weight because it was based only on a single examination and review only of Dr. Gelbort's neuropsychological evaluation, while the other Agency opinions were based on a review of the entire medical record. Regardless of whether it was proper for the ALJ to discount the opinion because the doctor had only examined Plaintiff a single time, as we explain above, the ALJ's second reason was more than sufficient.

Gelbort's opinion – which evaluated Plaintiff's mental and not physical impairments – Dr. Lopez missed the bulk of the medical evidence concerning Plaintiff's ability to use his upper extremities that the ALJ relied on to support her RFC. *See Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *7 (N.D. Ill. Aug. 11, 2022) (ALJ did not err in discounting one-time consultative examiner's opinion because he had not reviewed any of Plaintiff's treatment records and in giving great weight to non-examining Agency doctors who had reviewed Plaintiff's entire medical record before rendering opinions.)

### F. The Subjective Symptom Analysis Was Not Patently Wrong.

Social Security Regulation 16-3p guides an ALJ about how to evaluate the intensity and persistence of a claimant's subjective symptoms, so that he or she can determine how those symptoms might limit the claimant's ability to perform work-related activities.[9] The gist of Plaintiff's arguments is that the ALJ's subjective symptom analysis was not supported by substantial evidence because she did not fully address how Plaintiff's inability to pay affected his lack of treatment and also did not accept Plaintiff's characterization of his activities of daily living.

"While it is true that an ALJ's decision must be sufficiently detailed that [the court is] able to trace its path of reasoning," *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005), "an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). To put it another way, "[a] reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) citing in, *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022). Moreover, an ALJ's determination about a plaintiff's subjective

---

[9] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.htm, last visited on April 18, 2023.

10

symptoms is entitled to "great deference," *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014), and will not be overturned unless it is "patently wrong." *Hohman v. Kijakazi,* 72 F.4th 248, 251 (7th Cir. 2023).

As a whole, the ALJ's determination that Plaintiff's symptoms were not as severe as he alleged was not patently wrong. In the opinion, the ALJ explains that "a finding of a reduced range of light work is supported by evidence showing few deficits on physical exams and medical imaging, despite minimal and conservative treatment, with lack of consistent follow-up with specialists." (R. 943.) Specifically with respect to Plaintiff's allegations about his symptoms, the ALJ noted that (1) Plaintiff was inconsistent about taking his pain medications and declined to take NSAIDs; (2) he discontinued his physical therapy despite noted improvements and relatedly, there was no evidence to support Plaintiff's testimony that he had undergone years of physical therapy and work hardening programs; (3) there was no evidence of Plaintiff undergoing alleged pain injections; (4) he didn't follow up with specialists as recommended; and (5) there was no diagnostic clinical testing to support many of his complaints, such as allegations of symptoms in his shoulders, left knee, or right ankle. (R. 948-49.)

Plaintiff argues that the ALJ made an adverse inference about his failure to follow up with various medical specialists without confronting the fact that Plaintiff had difficulty paying for their treatment. As the ALJ recognized, at the hearing Plaintiff justified his failure to follow-up with various specialists due to outstanding bills that he was currently paying off. And although the ALJ did not explicitly explain how that information factored into her credibility analysis, any error was harmless because a number of the ALJ's reasons for not fully crediting Plaintiff's complaints about his symptoms – such as his inconsistency with medications, the absence of evidence to support Plaintiff's contentions about his years of physical and other therapy, and the lack of diagnostic

11

testing to support some of Plaintiff' claims – do not depend on Plaintiff's financial situation. Accordingly, there is no basis for remand even if the ALJ's "reasoning was not airtight." *Matthews v. Saul*, 833 Fed.Appx. 432, 437 (7th Cir. 2020); *see also Schrank v. Saul*, 843 Fed.Appx. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony ... was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.")[10]

## CONCLUSION

For these reasons, the Court denies Plaintiff's motion to remand (D.E. 17) and grants Defendant's motion to affirm (D.E. 23).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 29, 2023**

---

[10] Plaintiff also argues that the ALJ failed to properly address his testimony about his difficulties with certain activities of daily living, which better supported his problems handling and fingering. (Pl. Mem. in Support of Sum. J. at 14.) But the ALJ acknowledged Plaintiff's and his wife's testimony about his daily activities and was entitled to weigh them against objective evidence that he was less impaired than he claimed.